UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BHAGWATI P. BANSAL,                           *
                                              *
        Plaintiff,                            *
                                              *
    v.                                        *
                                              *      Civil Action No. 05-1696 (PLF)
WASHINGTON METROPOLITAN                       *
AREA TRANSIT AUTHORITY,                       *
                                              *
        Defendant.                            *
                                              *
_____              *


### FED. R. CIV. P. 56(f) DECLARATION OF GARY T. BROWN

1.  I am submitting this Declaration pursuant to Fed. R. Civ. P. 56(f) in support of Plaintiff's

    contentions that Defendant's Motion to Stay Discovery (Def. Motion) should be denied.

2.  In this case, Defendant filed the instant motion after Plaintiff had served his first set of

    Interrogatories and Requests for Production of Documents. Defendant only filed its

    motion when faced with having to respond to Plaintiff's discovery requests.

3.  Both written discovery and depositions are essential in this matter, even as to the issues

    raised by Defendant. For example, Plaintiff's position had been abolished by a

    Reduction in Force (RIF) multiple times prior to his eventual termination in 2004. In

    each prior RIF, Mr. Bansal was bumped into another position at Defendant WMATA.

    Plaintiff would seek discovery and conduct depositions to determine why he was

    terminated following the 2003 RIF rather than offered the opportunity to move into

    another position with Defendant. Further, Plaintiff would seek discovery as to when

    Plaintiff was informed that the RIF in question would lead to his eventual termination.



4.  In order to prove Plaintiff's claim that Defendant discriminated against him, Plaintiff would seek to depose members of Defendant's RIF Committee who could provide in depth information as to the determination of which employees would be moved to other positions and which would be terminated. Plaintiff would also pursue the specific qualifications for those positions for which he was deemed not qualified.

5.  Plaintiff would also seek to depose members of Defendant's Office of Human Resources regarding Defendant's claim that he "voluntarily retired." Plaintiff would also seek records from the Office of Human Resources.

6.  There is confusion in the records that have been produced by Defendant which needs to be clarified. Plaintiff's Exhibit 16[1], designated as the "Separation Personnel Action Report," indicates that Plaintiff left Defendant Metro by early retirement on February 1, 2004. There is no other document indicating that Mr. Bansal was affected at all by the operation of a Reduction in Force. It is the understanding of counsel that if Plaintiff had decided to retire after he was terminated, then two Separation PARs would be present in his personnel file. Yet the absence of an earlier such personnel report indicates that the RIF did not result in his termination, but merely was harassment intended to coerce him into voluntarily retiring. Such activities on the part of Defendant amount to a constructive discharge. Alternatively, was a RIF Separation PAR in Mr. Bansal's file, but removed to support Defendant's claim that Mr. Bansal left voluntarily? Not only would the removal of such a document, if it existed, be in contravention of Metro's rules but it could easily be concluded that such intention removal of a relevant document, and its non-production during the Initial Disclosure process, would be spoliation of evidence.

---

[1] References to "Plaintiff's Exhibit" indicate exhibits to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

2

7. In addition, Plaintiff would seek to depose Ms. Deborah Hans, Mr. Bansal's last supervisor prior to his departure, about the environment Plaintiff was forced to endure. Further, Plaintiff would also seek the perceptions of Plaintiff's supervisors as to his RIF as they were most familiar with his duties and the ability to perform them.

8. Further, other documents provided by Defendant indicate that Plaintiff Bansal was the only person in his Department who was placed on the RIF list and his duties were to be reassigned to the Bus Maintenance Analyst position, graded a TA-20 as well as the Budget Analyst and the Sr. Bus Engineer, all graded higher than Plaintiff. Plaintiff's Exhibit 22, September 2, 2003 BSMT Response to RIF Committee's Request for Additional Information. The Bus Maintenance Analyst Position is the same position which was filled only a few years before, with a high school graduate rather than Plaintiff. Was this a scheme to eliminate Mr. Bansal that carried over from his previous set of EEO complaints regarding his failure to be hired for that position?

9. Also, Plaintiff would seek to obtain statements from Plaintiff's former co-workers, who witnessed harassment of Mr. Bansal and/or other discriminatory or retaliatory conduct by Plaintiff's managers. Some of these witnesses may require depositions.

10. Plaintiff would further seek any EEO complaints by other WMATA employees pertaining to discrimination and/or retaliation.

11. Plaintiff would also seek data relating to other WMATA employees who have been designated as an employee affected by a RIF of Defendant and how many people were terminated as a result and how their qualifications were assessed as compared to available positions.

12. Plaintiff also needs to take the deposition of other management witnesses to successfully refute Defendant's inferred contention that no such harassment or discrimination occurred and that Plaintiff retired voluntarily.

13. The deposition testimony of the witnesses will also inevitably lead to new information that will need to be obtained in order to be able to fully and successfully prosecute this matter.

14. As a result, there are a myriad of material facts that have not been obtained and would be necessary to adequately and fully respond to Defendant's Motion for Summary Judgment.

15. All of the foregoing information is both material and discoverable, but has not yet been produced. Accordingly, Defendant's motion for summary judgment should be denied or delayed until discovery can be concluded.


FURTHER DECLARANT SAYETH NOT


I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____9/12/06_____            _____
Date                                Gary T. Brown

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BHAGWATI P. BANSAL,                       *
                                          *
       Plaintiff,                         *
                                          *
       v.                                 *
                                          *    Civil Action No. 05-1696 (PLF)
WASHINGTON METROPOLITAN                   *
AREA TRANSIT AUTHORITY,                   *
                                          *
       Defendant.                         *
                                          *

## DECLARATION OF BHAGWATI BANSAL

I, Bhagwati Bansal, declare the following:

1. I am the plaintiff in this civil action.

2. From 1981-2004, I was employed by the Washington Metropolitan Area Transit
   Authority. (WMATA). I have a degree in mechanical engineering and a Masters degree
   in Business Administration (MBA) from Marymount University. I was repeatedly denied
   promotion due to my national origin, Indian, and because of retaliation against me for
   filing complaints and other activities against WMATA.

3. In early 1997, I sought leave to amend the civil action which I had filed the previous year
   in this Court to include allegations of class wide discrimination and retaliation by
   Defendant WMATA. I helped organize a press conference held in front of Defendant
   WMATA's headquarters held on the day of the filing of the motion for leave to amend
   the complaint. The coverage by the media was quite successful with news reports on
   every major local news station and in many local news publications.



4. In November, 2003, I was informed that my position would be abolished as part of a Reduction-in-Force (RIF). I was informed of my rights to be bumped into another position and that should I not find another position I would be terminated effective January 10, 2004. November 13, 2003 Correspondence from Katrina Wiggins to Plaintiff, Plaintiff's Exhibit 12.[1]

5. At the time I received notice of the RIF, I was recovering from heart surgery and had been out of the office. Prior to receiving the RIF notice, I requested to temporarily telecommute due to my physical limitations during my recovery. Plaintiff's Exhibit 11. The request was ultimately denied. In January 2004, I was diagnosed with tuberculosis and remained out of work.

6. I have been part of a RIF on three prior occasions in 1985, 1992 and 1994 and each time the RIF did not lead to my termination. Instead, WMATA worked with me to place me into another position. Plaintiff's Exhibits 4-10.

7. In my tenure at WMATA, generally if an employee had been part of a RIF, a new position was found for them.

8. During each of the three prior RIF's, WMATA personnel actively worked with me to find another position which I could be moved to following the RIF and each time I was placed into a new position.

9. Each time my position was abolished due to a RIF prior to 2003, I had conversations with either the director of the division in which I worked, or the Director of Personnel assuring me that I would be given another position.

---

[1] All references to "Plaintiff's Exhibit" refer to exhibits to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

10. On September 9, 1994, I received notice that my position would be abolished as part of a RIF on November 7, 1994. Plaintiff's Exhibit 8. I was bumped into the position of Bus Maintenance Assistant and my Personnel Action Report was processed on November 8, 1994 Plaintiff's Exhibit 10.

11. Following my RIF in 1994, I had remained in the same position for nearly ten years so that when I received the RIF notice in 2003, I did not think that I would be terminated. After all, I had ten additional years of experience, tenure and training.

12. During the period following the RIF notice of November 2003, I contacted both WMATA's Office of Human Resources as well as my union, Local 2, to identify available positions.

13. I submitted my application for approximately twenty available positions for which I believed I was eminently qualified with my education, training and years of experience. However, all of my applications were rejected and I was deemed unqualified for many of them. Plaintiff's Exhibit 14.

14. I was not aware that the RIF would result in my termination until on or around January 8, 2004 when I was informed by Roslyn Rikard of WMATA's Office of Human Resources that because no positions were found for me to be reassigned to by January 10, 2004, I would be terminated.

15. After I learned that I would not be placed into another position, I was left with no viable option other than to file for retirement on January 16, 2004. Defendant's Exhibit 1.[2]

16. On March 15, 2004, I requested severance pay pursuant to the Local 2 Collective Bargaining Agreement, Article VII, Section 12(a), Plaintiff's Exhibit 17, and received payment of 26 weeks severance on March 19, 2004.

---

[2] References to "Defendant's Exhibit" are indicative of exhibits to Defendant's Motion for Summary Judgment.

17. I believe that I was ultimately terminated because of my national origin, disability and/or
my participation in protected activities.


I declare under penalty of perjury that the foregoing is true and correct.    Executed on
September 12, 2006.

B. P. Bansal          9/12/06
—————————————
Bhagwati Bansal

**Bhagwati P. Bansal**
19508 Brassie Place, Montgomery Village, MD 20886
(301) 305-8959

**Master's of Business Administration.** 1989
Marymount University, Arlington, VA

**Bachelor of Science, Mechanical Engineering,** 1973.
Ranchi University, India

**Certification:**
Microsoft Certified Trainer (MCT), 2000
MCSE (Windows 2000) + Internet, 2000
Cisco Certified Network Associate (CCNA)

## Professional Experience

2001 – Present: UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE, as an
Adjunct faculty, teaching Computer Information Technology courses.

1981 - Present: WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

Bus Management Assistant (1994 – Present)
- Prepared fuel and oil report
- Designed database
- Prepared Bus failure reports for upper management review

Capital Program Coordinator (1992-1994)
- Provide continuous review and monitoring of CIP activities to insure completion of the project within budget or under-budget.
- Prepare and review procurement actions to insure compliance with technical specifications, federal and state regulations and DBE regulations.
- Expedite the CIP Program within WMATA and state and local governments.
- Assist in the preparation and development of special projects, studies and analyses related to the CIP Program.
- Establish and maintain on-going, effective working relationships with key staff within WMATA and with representatives of business corporations and governments.

Project Engineer (1985-1992)
- Oversaw the activities of consultants, by providing direction and guidance, in the design and development of remedial efforts required at BUS and RAIL facilities.
- Provided Life Cycle costing and accounting and Industrial Engineering Analyses concerning the facilities and their components.
- Planned and reviewed all aspects of design projects, including budgetary - financial parameters, scheduling and design development. A significant portion


PLAINTIFF'S
EXHIBIT
3

of these tasks involved coordinating the activities of various departments and outside jurisdictions.

- Conducted field inspections and on-site surveys of facilities to determine the scope of the remedial efforts required and to resolve problems expeditiously, per the request of BUS and RAIL divisions.

Mechanical Engineer (1981-1985)

- Developed inspection procedures for equipment and facilities.
- Supervised electrical and mechanical technicians.
- Established procedures for the selection of manufacturers and contractors.
- Approved technical recommendations for resolving issue.
- Initiated effective, corrective action for uniform enforcement.

**M metro**

Washington Metropolitan Area Transit Authori

━━━━━━━━━━━━━━━━━ MEMORANDUM ━━━━━

MEMO 4/29/87

SUBJECT   Personnel Actions Resulting
          from 1985 Reorganization                          DATE  April 29, 1987

FROM:   ENGA - Vernon K. Garrett, Jr., Director
        FMNT - David O. Cooksey, Director          IN REPLY
        BGMA - LaMar Dotter, Director              REFER TO

TO   PERS - Roy Brown, Director


The General Manager approved an Authority reorganization plan in
August, 1985 which caused considerable turbulence in personnel space
assignments throughout the Authority. The purpose of this memorandum is
to reconstruct the events and personnel actions specifically related to
FMNT and ENGA in order to resolve any questions relating to current and
future personnel actions affecting Messrs. Subhash Zaveri and Bhagwati
Bansal.

As a result of the aforementioned reorganization, the engineering
functions and associated spaces (TA-16s) were abolished in the FMNT
organizational structure. At the same time a new branch was created
within ENGA to provide engineering support to all operating and
maintenance units. This Branch is the Facilities Engineering Branch,
ENGA and is authorized 1-TA-26, Chief, 1-TA-24, Supervisor, Project
Engineer, 4-TA-22s, Project Engineer and 1-TA-8 Secretary.

The Director, FMNT, Mr. Cooksey advised Messrs. Zaveri and Bansal
that their positions were abolished and that every effort would be made
to find suitable alternative positions within the Authority.

The Director of ENGA, Mr. Garrett, was approached to determine
whether or not these engineers could be utilized within ENGA. After
evaluating their background and experience, it was agreed that they could
be transferred to the Facilities Engineering Branch as TA-16s in two of
the authorized TA-22 project engineer spaces provided that they would be
placed in on-the-job training and upgraded periodically as they became
more qualified to function as project engineers.

The then Acting Director of PERS, Mr. Dotter, was consulted on
these proposed actions and gave his full concurrence on them since they
complied fully with both spirit and intent of the stated Authority policy
regarding placement of displaced employees. Since the ENGA spaces were
Local 2 positions, it was determined that the upgrade actions would be
noncompetitive up to grade TA-20 (lowest current grade) and then the
TA-22 would be advertised for competitive assignment.

In accordance with that agreement PAR's were processed in Feb. 1986
reassigning Messrs. Zaveri and Bansal to ENGA.

PLAINTIFF'S
EXHIBIT

PENGAD-Bayonne,N.J.

Following a year's close supervision and training, it has been determined that these engineers are qualified for the first incremental upgrade to TA-18. A PAR to that effect has been processed for Mr. Bansal and has reached your office. We are now advised that it cannot be processed further because there is no "paperwork" to justify the action.

We are requesting that you accept this memorandum as the necessary justification and honor the commitment we made in good faith to these individuals.

Your cooperation will be greatly appreciated and if you need further discussion, please advise.

CONFIDENTIAL
WA3 000466



# Washington Metropolitan Area Transit Authority

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━ **MEMORANDUM** ━━━━

SUBJECT: Transfer and Permanent Reassignment        DATE: February 3, 1986

FROM: FMNT - David O. Cooksey                        IN REPLY
THRU: Joseph Greenway                                REFER TO:

TO: FMNT - Bhagwati P. Bansal


Please be advised that as a result of the Office of Facilities Maintenance (FMNT) reorganization, your current position of Mechanical Engineer, TA-16 has been abolished.

Inasmuch as the engineering requirements of this office has been transferred to the newly created Facilities Engineering Branch, Office of Engineering, you are being reassigned on a non-competitive basis to a permanent position of Mechanical Engineer, TA-16 within that office effective February 3, 1986.

Thank you for your patience and cooperation.



PLAINTIFF'S
EXHIBIT
5
PENGAD-Bayonne,N.J.

068 00 1213