# WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
# SEPARATION PERSONNEL ACTION REPORT



45813

## SECTION 1 – EMPLOYEE INFORMATION
**DATE:** 01/27/2004

**Type of Separation:** (Check One)
- ☐ Resignation
- ☐ Dismissal
- ☐ End of Assignment
- ☐ Normal Retirement
- ☒ Early Retirement
- ☐ Disability Retirement
- ☐ Reduction-In-Force
- ☐ Death

| Employee Name | Social Security Number | Employee Number |
|---|---|---|
| BHAGWATI P BANSAL | 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 | 035311 |

| Address | City | State | Zip Code |
|---|---|---|---|
| 19508 BRASSIE PL | GAITHERSBURG | MD | 20879 |

| Home Phone | Dept/Office | Office Code | Location Code | Supervisor |
|---|---|---|---|---|
| 301-977-2940 | BMNA | 3231 | 6950 | DEBORAH HANS, SUPERINTENDENT |

| Last Position Title | Employment Group | Union Code | Level/Grade-Step | Salary |
|---|---|---|---|---|
| BUSV MANAGEMENT ASST | ☒ Rep ☐ Non-Rep | 0002 | 16/2A | $63,771.00 |

| Effective Date of Action | Last Day Worked | Remarks |
|---|---|---|
| 02/01/2004 | 01/09/2004 | |

## SECTION 2 – SEPARATING DEPARTMENT/OFFICE

| Rule Book | Keys | WMATA I.D. | Clothing | Parking Permit | Other* | ITSV I.D. |
|---|---|---|---|---|---|---|
| ☐ Yes ☐ No ☒ N/A | ☐ Yes ☐ No ☒ N/A | ☐ Yes ☐ No ☒ N/A | ☐ Yes ☐ No ☒ N/A | ☐ Yes ☐ No ☒ N/A | ☐ Yes ☐ No ☒ N/A | ☐ Yes ☐ No ☒ N/A |
| Value: | Value: | Value: | Value: | Value: | Value: | Value: |

*Explanation of other:

Total Amount Due:

Employee Signature: _____ Date: _____

Supervisor Signature: _____ Date: _____

Office Director: PHILLIP C. WALLACE    *P. Cirelli* (signature)    Date: 01-27-04

## SECTION 3 – OFFICE OF HUMAN RESOURCE MANAGEMENT AND PLANNING

| Recall Rights | Recall Eligibility | Severance Benefits |
|---|---|---|
| ☐ Yes ☐ No | ☐ 1 Year ☐ 2 Years ☐ 3 Years | Eligible for Union Severance Benefits? ☐ Yes ☐ No<br>Ending Date for Severance Benefits: |

## SECTION 4 – APPROVALS

Director/HRMP Representative: *Catrina J. Wiggins* (signature)    Date: 2-13-04

Assistant General Manager/WDDP: _____ Date: _____

General Manager/CEO: _____ Date: _____

## SECTION 5 – OFFICE OF ACCOUNTING

| ☐ Advanced Annual Leave | ☐ Advanced Sick Leave | ☐ Uniforms | ☐ Property | ☐ U.S. Savings | ☐ Advanced Travel |
|---|---|---|---|---|---|
| Value: | Value: | Value: | Value: | Value: | Value: |

| ☐ Tuition Reimbursement | ☐ Relocation Reimbursement | ☐ Other | Credit Union | | |
|---|---|---|---|---|---|
| Value: | Value: | Value: | AB&W ☐ Yes ☐ No | Transit Employee ☐ Yes ☐ No | |

Total Value: 0'uw   Certified By: *Bhr M. Va____* (signature)   Certification Date: 3-1-04

## SECTION 6 – OFFICE OF TREASURER

WMATA ID Received: ☐ Yes ☒ No    Retire    WMATA ID Charge:

Certified By: (signature)   Date: 3-1-04    Certified By: _____   Date: _____

(rev.Web-2003)   ORIGINAL - HRMP   COPY-TRES   COPY - EMPLOYEE   COPY ORIGINATOR/OFFICE



PLAINTIFF'S EXHIBIT 16

# AN AGREEMENT BETWEEN

## THE WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
## AND
## THE OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION LOCAL NO. 2, AFL-CIO

### JULY 1, 2000 - JUNE 30, 2004



PLAINTIFF'S EXHIBIT 17

being replaced or the employee's current wage plus five percent (5%), whichever is less provided no employee shall receive a reduced wage by operation of this provision and provided that the wage rate will be no less than Step 1 of the Local 2 salary for that grade. The revised wage rate shall be retroactively effective to the first day on which the employee is assigned to the duties of the temporary job assignment. Acting appointments shall not normally exceed a period of six (6) consecutive months provided that appointments may be extended in appropriate cases for specific duration not to exceed an additional ninety (90) days.

Employees in an acting capacity will be eligible for their normal salary increase on the employee's regular anniversary date.

(7) Any employee accepting an appointment to an acting or regular position shall be provided up to thirty (30) working days to demonstrate ability to perform the new work. If, in the sole discretion of the Authority, the employee does not perform satisfactorily during the qualifying period, the employee shall be returned to the position that the employee held immediately prior to the appointment. During the qualifying period, the employee, at his sole option, may elect to return to the position held prior to the appointment, without prejudice.

In either case, the transitional appointment shall be deemed void and the employee shall be restored to the pay rate and anniversary date as if he had not accepted the appointment.

The Authority and an employee may extend this qualifying period to a total of ninety (90) working days by mutual written agreement; copies of this agreement shall be provided to Local 2, the Office of Employee and Labor Relations (LABR), and each affected office. During such extension, the Authority may return the employee to the prior position and the employee may elect to return to the prior position.

(8) Regular employees will be eligible to bid on vacancies in temporary positions. If a regular employee is awarded the job, the employee will retain regular employee status.

Temporary employees will be eligible to bid on both regular and temporary vacancies. If a temporary employee is awarded a regular job, the employee's status will be changed to regular.

## ARTICLE VIII - LAYOFFS AND RECALL

(1) The Authority will meet with Local 2 at least sixty (60) days before the effective date of a reduction-in-force or reorganization impacting Local 2 positions to provide details regarding the RIF or reorganization.

(2) If the Authority determines to reduce the workforce covered by this Agreement, the

9

procedures written below shall be used. Notices of any layoffs shall be given to the Union at least sixty (60) days in advance of the date proposed for layoff. Each RIF-designated employee, including displaced employees, will receive at least five (5) days' notice prior to the effective date of the RIF.

(3)   Upon issuance of notice of an impending layoff, all job vacancies or new jobs occurring at positions covered by this agreement, shall be reviewed for impact on the reduction in force or opportunity for displacement prior to being posted in accordance with Article VII.

In cases of layoff, the least senior employee in an affected classification shall be designated for layoff, except the parties recognize that in the case of reimbursable projects or in some classifications and some work assignments within a classification, because of the specific training and experience, required layoff on the basis of strict seniority may not be feasible. The Authority shall have the burden of establishing the applicability of the exception, but in such cases the person designated for layoff shall be determined by (a) seniority and (b) ability to perform the work. Where factor (b), as determined in the judgment of the employer by legitimate job related factors, is approximately equal among candidates, seniority shall govern. It is the intent of the parties that the maximum protection of seniority rights shall be afforded in all layoff matters wherever feasible.

(4)   Any employee so laid off may displace another employee with the least seniority in the same or lower labor grade in any bargaining unit classification, provided that the bumping employee has the qualifications to satisfactorily perform the job competently and efficiently and has greater seniority.

An employee who is displaced as a result of such procedure may displace another employee through the same procedure.

(5)   Temporary employees shall have the same displacement rights as regular employees.

A regular employee affected by a reduction in force will be permitted to displace a temporary employee. If a regular employee displaces a temporary employee, the regular employee will retain regular employee status.

Part-time employees may displace only other part-time employees under section 4, above. A part-time employee may not displace a full-time employee.

A full-time employee affected by a reduction in force will be permitted to displace a part-time employee. If a full-time employee displaces a part-time employee, the full-time employee will assume part-time employee status.

(6)   In the process of bumping during layoff, the Authority and the Union agree where

10

possible to minimize the number of moves so as not to impede the operation of the Authority. The parties agree that employees shall not delay in selecting among positions for displacement in lieu of layoff. Employees shall have five (5) working days within which to select from the available position(s); employees failing to select an available position within five (5) working days, shall be assigned to the position. Employees declining the assigned position(s), shall move to the end of the seniority selection order.

(7) Any employee so affected who transfers into a lower pay grade will be paid according to the provisions of Article VII, Section 4, provided that for an employee receiving a longevity increase, the longevity increase will be included in determining the employee's current pay rate and the employee's new pay rate may include the longevity increase for the new grade.

(8) The Authority shall maintain a "recall list" of employees who have been laid off. Employees laid off shall be entitled to remain on this list for two (2) years. This section does not apply to temporary employees.

(9) The Authority shall circulate among employees on the recall list a listing of job vacancies. The Authority shall not hire from the open labor market while there are employees on the recall list who are ready, willing and able to be reemployed, and who are qualified to perform the duties in the position(s) for which hiring is being contemplated. The immediately previous occupant of the available position, who was either laid off or bumped into a lower rated position to avoid layoff, shall be selected for an available vacancy. If the prior occupant is not interested or available, and there are candidates for an available position both from the recall list and active employees, the most qualified candidate shall receive the job. If the Authority deems that two or more applicants are equally qualified, the employee on recall shall receive the job. If two or more active employees are the most qualified applicants, seniority shall govern the selection. This section does not apply to temporary employees.

(10) Employees restored to service shall receive the rate of pay due the position they occupy including increases which are applied to the job classification during the period they were on the recall list. This section does not apply to temporary employees.

(11) Notices of job awards shall be sent by registered mail to the last known address of a laid off employee. Employees on recall shall be responsible for informing the Authority of any change in address or other pertinent status. Employees receiving such notices shall respond within five (5) work days by informing HRMP of their intentions on returning to work. Employees intending to return to work shall report within five (5) work days from this response, unless another time period is mutually

agreed upon between the employee and the Authority, or stand to lose their seniority rights. Employees who reject a job award shall forfeit further recall rights. This section does not apply to temporary employees.

(12) Employees who are designated for layoff shall be entitled to severance pay as follows:

(a) Employees shall receive two weeks severance pay per year of service for each full year with a limit of twenty-six (26) weeks pay. Severance pay shall cease upon the recall of an individual. Any individual who receives severance pay and is recalled in less than two (2) years shall have the option of repaying the severance pay and having future severance pay computed from the original date of hire or may retain the severance pay and use the rehire date to determine any future severance entitlement. Should an employee elect to use the rehiring date for computation of future severance pay, it shall in no way affect that employee's seniority, pension, vacation or any other rights provided by this Agreement. Severance payments for full-time and eligible part-time employees shall be based on the hours in a normal two-week pay period for such employee (75 hours for L2TA and 80 hours for L2TS). Severance payments for eligible part-time employees shall be based on their regularly scheduled hours.

The other provisions of subsection (a) shall apply. This section applies to part-time employees with ten (10) or more years of service with the Authority but does not apply to part-time employees who have less than ten (10) years of service.

(13) The Authority agrees to pay its share of health insurance premiums in order to provide health insurance for laid off regular full-time and eligible part-time employees through the end of the second month succeeding the month of layoff. The employee share of such premium can be deducted from any applicable severance pay entitlement. Thereafter, the employee, at his/her option and expense, may continue coverage for a period of up to two (2) years at WMATA group rates. This section applies to part-time employees with ten (10) or more years of service with the Authority but does not apply to part-time employees who have less than ten (10) years of service.

(14) The Authority will provide reasonable office support services for laid off employees for job search assistance to a maximum of three (3) months following date of layoff to include phone, phonemail, desk, word processor, and photocopier access.

## ARTICLE IX - DISCIPLINE AND RESIGNATION

(1) Employees shall be subject to disciplinary action, including discharge, for just cause provided that the employee knew or reasonably should have known that his/her conduct could lead to disciplinary action. Where the Authority has promulgated



March 30, 2004

Mr. Bhagwati P. Bansal
19508 Brassie Place
Montgomery Village, MD 20886

Dear Mr. Bansal:

This is in response to your letter dated March 15, 2004 regarding the Personnel Action Report and your severance check.

Enclosed is a copy of your Reduction In Force letter which is attached to the Personnel Action Report in your personnel file.

Your severance check was direct deposited to your checking account on March 19, 2004. The pay voucher to support same was mailed on March 22, 2004.

Should you have any other concerns, please contact Roslyn Rikard on 202-962-1396 or Roberta Hamilton on 202-962-2397.

Sincerely,

Katrina J. Wiggins, SPHR
Director
Human Resources Management and Planning

**Washington
Metropolitan Area
Transit Authority**

600 Fifth Street, N.W.
Washington, DC 20001
202/962-1234

By Metrorail:
Judiciary Square—Red Line
Gallery Place-Chinatown—
Red, Green and
Yellow Lines
By Metrobus
Routes D1, D3, D6, P6
70, 71, 80, X2

A District of Columbia,
Maryland and Virginia
Transit Partnership

PLAINTIFF'S EXHIBIT 18


PLAINTIFF'S EXHIBIT

I. Complaint Number - 853-95

Complainant - Bhagwati P. Bansal

Date of Complaint - November 16, 1994

Nature of Complaint - National Origin, Age, and Retaliation, Per Title VII of the Civil Rights Act of 1964 alleging that he was targeted for the Reduction-In-Force in the Department of Rail Services based on the above. Also, Retaliation, per Title VII, following the filing of previous complaints.

II. Background

Mr. Bhagwati P. Bansal, a Bus Management Assistant, in the Department of Rail Service alleged that he was rifed from his position of Capital Program Coordinator based on his national origin (Indian) and his age (47). He also states that he has been consistently rifed from previous positions which resulted in the filing of numerous grievances. Mr. Bansal feels that he is being retaliated against based on the filing of complaints.

III. Actions of the Investigator/ Investigative Chronology

On April 9, 1995 met with BUSV management to discuss reduction-in-force.

On April 28, 1995 met with complainant to discuss case.

On April 29, 1995 met with Office of Personnel to discuss gender/race of persons designated for reduction-in-force.

On May 8, 1995 met with Rail management to discuss reduction-in-force.

IV. Summary of Findings and Conclusions

Mr. Bansal was hired by the Authority on June 15, 1981 as a Mechanical Engineer, TA-16. On October 18, 1995, his position was abolished as the result of a reorganization within the Office of Facilities Maintenance. He was reassigned to a newly created Facilities Engineering Branch of the Office of Engineering as a Project Engineer, TA-16 effective February, 1986. On July 18, 1987, Mr. Bansal was promoted to a TA-18 and on May 7, 1988 he was promoted to a TA-20. In December 1991, he was reassigned as a Project Engineer in Rail Service Engineering and in May 1992 he was transferred to the position of Capital Program Coordinator in the Department of Rail.

CONFIDENTIAL
WA3 000389

In November, 1994 the Department of Bus Service and Rail Service consolidated which resulted in the abolishment of 127 position of which 86 were encumbered. All 86 employees, including Mr. Bansal received Reduction-In-Force letters. However, during this period Mr. Bansal was offered and accepted a position of Bus Management Assistant TA-16. In addition to Mr. Bansal, there were six (6) other employees that received reduction-in-force notices and were either placed or separated from the Authority. They are as follows:

Eric Nelson - White Male - separated
Terrence Roman - White Male - reassigned
Donna McEntee - White Female - reassigned
Edgar Green, Jr. - Black Male - reassigned
Robert Peterson - While Male - reassigned

V. **Recommendations**

Based on the information received from Rail Management and meetings held with the Department of Operations, there is no evidence to support Mr. Bansal's allegation of discrimination based on National Origin. Therefore, the Office of Civil Rights considers this matter closed.

_____       July 14, 95
Signature of the Investigator              Date

Concurrence:

_____       _____
Director of Civil Rights                Date

CONFIDENTIAL
WA3 000390

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

------------------------------x
BHAGWATI P. BANSAL et al.,      :
                                :
        Plaintiffs,             :
                                :
                                :
    v.                          : Civil No. 96-2228 (PLF)
                                :
WASHINGTON METROPOLITAN         :
AREA TRANSIT AUTHORITY,         :
                                :
        Defendant.              :
------------------------------x

                        Washington, D.C.

                        Monday, January 12, 1998

Deposition of

                BHAGWATI P. BANSAL

a Plaintiff, called for examination by counsel

for Defendant pursuant to notice and agreement

of counsel, beginning at approximately 11:00

a.m., at the Law Offices of Kaye, Scholer,

Fierman, Hays & Handler, LLP, 901 Fifteenth

Street, Suite, 1100, Washington, D.C., before

Joan V. Cain, CSR and notary public in and for

the District of Columbia, when there were

present on behalf of the respective parties:



PLAINTIFF'S EXHIBIT 20

98

| | | |
|---|---|---|
| 1 | Q | He was retaliated against? |
| 2 | A | Yeah. |
| 3 | Q | That's what you believe? |
| 4 | A | Yeah. |
| 5 | Q | Do you believe that Eric Nelson, who in fact lost his job completely, do you believe that he was discriminated against or retaliated against because of this RIF? |
| 9 | A | He left happily. |
| 10 | Q | Pardon me? |
| 11 | A | He left happily. |
| 12 | Q | How do you know he left happily? |
| 13 | A | He got his severance pay and he left happily, voluntarily. He didn't go there, okay, didn't submit any bump list or anything. "Here is my RIF notice. Give me the money and I'm out." |
| 18 | Q | In fact, he left because he couldn't get a job at the same level he had, didn't he? |
| 20 | A | To me, he said he never tried for the job. |
| 22 | Q | And you know personally that he was |

# Bhagwati P. Bansal
19508 Brassie Place, Montgomery Village MD-20886
Date: May 4, 2004

Katrina J. Wiggins
Director, HRMP
WMATA

Dear Ms. Wiggins:

Ref: (Personnel Action Report)

Thanks for responding to my letter dated March 15, 2004, and for sending the severance pay check.

There is one remaining matter that requires attention. I previously requested that the Personnel Action Report (PAR) be corrected to state that the reason for separation was a "Reduction in Force" not EARLY RETIREMENT as the PAR currently states. Please correct this mistake and do not misrepresent the facts. Also, send me a revised Personnel Action Report, indicating the actual reason for separation, as soon as possible. Thank you very much.

Sincerely

*B. P. Bansal*

Bhagwati P. Bansal


Cc: Gary T. Brown, ESQ.

   Rhchard White
   J. Gallagher
   Local 2- T. O' Connor


PLAINTIFF'S EXHIBIT 21

# M E M O R A N D U M



| | |
|---|---|
| SUBJECT: OPER's Proposed Reduction-In-Force | DATE: September 2, 2003 |
| FROM: OPAS - James J. Hughes | IN REPLY REFER TO: |
| TO: WDDP - Ruth Parks | |

In response to your request for additional information as stated in your memo of August 18, 2003, please find the following:

A. A copy of the job descriptions subject to OPER's RIF request are attached for your review.

B. A spreadsheet showing for Plant Maintenance those positions which are subject to RIF, ERIP (Early Retirement Incentive Plan), and jobs eliminated.

C. A revised Appendix A, "Comparative Performance of Skills & Potential Contributions," now includes the Supervisory Management Analyst-GMAC.

D. RIF Data Sheets:

   1. Marie Anderson - See updated response to "C" above.

   2. Intay Lyu - See attached response.

   3. Daniel M. Baryshev - See attached response.

   4. Bhagwati P. Bansal - See attached response.

Please advise if you need further data in response to OPER's RIF request.

**Washington Metropolitan Area Transit Authority**



RECEIVED SEP - 3 2003 AGM-WDDP



PLAINTIFF'S EXHIBIT 22

BMNT Response to RIF Committee's Request for Additional Information

Bhagwati P. Bansal, BUSV Management Assistant

1.) Why was this particular position designated by BMNT for the proposed RIF ?

**This particular positions duties are easier absorbed into other positions within the department without taking Local 2 work away from Local 2 positions.**

2.) Clarify how much work is being eliminated and/or transferred ?

**No work is being eliminated. The work is being transferred/absorbed by other Local 2 positions. The following is the work being absorbed into other Local 2 positions. The Tire Mileage reports will be absorbed into the Budget Analyst position since this information is budget related. The Fuel Reconciliation reports are also being absorbed into the Budget Analyst position since it too is budget related. The Fuel Consumption reports will be absorbed by the Bus Maintenance Analyst position since this is maintenance related information of the performance of the vehicle fleet. The Material Safety Data Sheet (MSDS) information is being absorbed into the Sr. Bus Engineer position. This relates material and supplies for bus maintenance and any required MSDS sheets for same.**

3.) Advise whether the workload of the incumbent of the Bus Maintenance Analyst and the Budget Analyst positions is already sufficient to warrant a full time position ?

**The current workloads of these positions are more than enough to warrant full time positions.**

4.) What is the impact on the workload of the Bus Maintenance Analyst and the Budget Analyst positions when it includes the work of the BUSV Management Assistant ?

**Since it is being split between three other positions the impact of the additional workload on these positions is manageable. As I indicated above, the work will be absorbed into each of the other positions as it relates to the work.**