IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BHAGWATI BANSAL :

Plaintiff, :

v. : C.A. No. 05-1696 (PLF)

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY :

Defendant. :

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE SECOND AMENDED COMPLAINT**

Defendant Washington Metropolitan Area Transit Authority ("WMATA") hereby moves for Summary Judgment in the above-captioned action relating to plaintiff's loss of employment due to a reduction in force ("RIF"). Plaintiff alleges that the RIF was based on his national origin, sex, disability and retaliation. He sues under Title VII of the Civil Rights Act of 1964, as amended, under the Rehabilitation Act of 1973 and 42 U.S.C. § 1983. Defendant previously filed a Motion for Summary Judgment directed at the First Amended Complaint, and plaintiff responded with an Opposition, a Declaration under Fed. R. Civ. P. 56(f), a counter statement of material facts not in dispute, a Motion to file a Second Amended Complaint and a proposed Second Amended Complaint. Rather than litigate the futility of the amendment, Defendant stipulated to the filing of the Second Amended Complaint and hereby files this Motion for Summary Judgment directed to that Complaint.

This Motion is made on the grounds that plaintiff failed to file his administrative

complaint with the Equal Employment Opportunity Commission ("EEOC") within the 180 day statute of limitations and that, even if he did, he suffered no adverse action to state a *prima facie* case.[1] This Motion is further based on the grounds that plaintiff was not a "qualified individual with handicap" under the Rehabilitation Act and that WMATA is immune from suit under 42 U.S.C. § 1983.

Although plaintiff filed a Declaration under Fed. R. Civ. P. 56(f) in connection with the prior Motion for Summary Judgment, directed to the First Amended Complaint, no factual issues existed then or exist now as to the legal issues presented in this Motion so as to require further discovery.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I. FACTUAL BACKGROUND

Plaintiff Bhagwati Bansal was notified on November 13, 2003 that his position as a BUSV Management Assistant would be eliminated on January 10, 2004. Complaint ¶ 13. Statement of Material Facts Not in Dispute ("SMF") ¶ 4. On January 16, 2004 he filed for early retirement to be effective February 1, 2004, which request was granted.

---

[1]WMATA notes that there are other grounds on which summary judgment might be granted, but as discussed during the last status conference, this motion is being filed before meaningful discovery has ensued and discovery is stayed except as authorized under Fed. R. Civ. P. 56(f). Among the issues which WMATA reserves the right to address at a later stage, should summary judgment be denied are whether plaintiff can establish that the articulated reason for the RIF is pretextual.

[2]Despite the stay of discovery, WMATA has voluntarily provided discovery to plaintiff in response to his Interrogatories and Requests for Production in the form of all of Plaintiff's personnel file and the complete file relating to the reduction-in-force at issue here.

SMF ¶ 5. He retired on February 1, 2004. SMF ¶ 6.

Plaintiff filed a Charge with the EEOC on June 28, 2004 alleging discrimination on the basis of sex, national origin, retaliation, age and disability. SMF ¶ 7. In his Second Amended Complaint in this Court he alleges only national origin, sex, disability and retaliation discrimination. The age discrimination claim was earlier dismissed by the Court.

**II. PLAINTIFF FAILED TO FILE WITHIN THE 180 STATUTE OF LIMITATIONS**

Title VII claims against WMATA are governed by the 180 day statute of limitations. 42 U.S.C. § 2000e-5(e)(1). See Washington v. WMATA, 160 F.3d 750, 752 (D.C. Cir. 1998). To calculate this time period, the "proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." Chardon v. Fernandez, 454 U.S. 6, 8 (1981), affirming Delaware State College v. Ricks, 449 U.S. 250, 258 (1980). Accord Saunders v. District of Columbia, Slip Op. No. 02-1802 (CKK), 2005 WL 3213984, *6 (D.D.C. 2005); Morgan v. Federal Home Loan Mortg. Corp. 172 F. Supp.2d 98, 108 (D.D.C.,2001)(claims would have accrued when plaintiff was told that he would not be hired, not when someone else was selected for the position, citing Ricks, 449 U.S. at 256-58); Harris v. Ladner, 127 F.3d 1121, 1124 (D.C. Cir.1997) (holding that statute of limitations commences when final decision made and communicated to plaintiff); Thompson v. Capitol Police Bd. 120 F. Supp.2d 78, 82 (D.D.C.2000) ([T]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful.) (citation omitted).

In Ricks, the plaintiff was given notice that he was going to be denied tenure over one year prior to his actual termination, because it was the practice of the college to

grant a one-year nonrenewable contract to teachers who were denied tenure. The Court held that it was the notice of denial of tenure that triggered the statute of limitations on Rick's denial of tenure claim, not the actual date he stopped working. Similarly, in Chardon, the plaintiffs were given notice prior to June 18, 1977 that their appointment would terminate at a specified date between June 30 and August 8, 1977, and plaintiff Fernandez filed his complaint under 42 U.S.C. § 1983 on June 19, 1978. The Court held that the suit was barred by the applicable one year statute of limitations, following Ricks.

The Chardon decision sparked a vigorous dissent from Justice Brennan, who also dissented in Ricks. He stated:

> It is one thing to hold, as was held in [Ricks] that for the purpose of computing the limitations period, a cause of action for denial of a benefit such as tenure, and consequent damage, accrues when the plaintiff learns that he *has been* denied that benefit; it is quite another to hold, as the Court does here, that a cause of action for damages resulting from an unconstitutional termination of employment accrues when the plaintiff learns that he *will be* terminated.

454 U.S. at 9 (emphasis in original)(Brennan, J., dissenting). That is exactly the situation in the case at hand. Bansal learned that he would be subject to the RIF on November 13, 2003, therefore his cause of action relating to the RIF accrued on that date, when he learned that he *would be* subject to the RIF.

Plaintiff waited 230 days after receiving notice of his RIF to file a charge with the EEOC. Plaintiff was already represented by counsel in prior related proceedings before this Court. The fact that plaintiff was given the opportunity to remain on the payroll during the period between the time of his notice and the time of his termination is no

different that the period of one year employment the plaintiff in Ricks had after his notice that he would not be getting tenure. Since plaintiff received notice of the RIF on November 13, 2003, he should have filed with the EEOC on May 11, 2004. He filed, instead on June 28, 2004. His failure to timely file must result in dismissal of his claims. See Thompson v. Washington Metropolitan Area Transit Authority, Slip Op. 99-2638 (ESH), (D.D.C. 2000)(copy attached as Exhibit 4), aff'd mem., 2001 WL 115420 (D.C. Cir. 2001)(per curiam). In Thompson, Judge Huvelle held:

> Mr. Thompson received notice of his demotion on October 6, 1998, and the demotion was effective October 25, 1998. Under the Supreme Court's holding in [Ricks], the time for filing a charge ran from the date that plaintiff was informed of the allegedly discriminatory act, and thus, Mr. Thompson was obligated to file his EEOC charge 180 days from WMATA's final decision to demote him – i.e. on or before April 4, 1999. However, Mr. Thompson filed with the EEOC on July 29, 1999.. . .Since Mr. Thompson's EEOC charge was not timely filed, he cannot proceed under Title VII because he has failed to exhaust his administrative remedies. Washington [v, WMATA,160 F.3d 750,752 (D.C. Cir. 1998)].

Slip Op. at 2-3.

Similarly, in Courtney v. La Salle University, 124 F.3d 499 (3d Cir. 1997), the court held that a challenge to a mandatory retirement policy was time barred because the statute of limitations begins "'when the employer has established its official position and made that position apparent to the employee by explicit notice.'" 124 F. 3d at 504 (citations omitted). And, in Kuemmerlein v. Bd. of Educ. Of Madison Metro. School Dist., 894 F. 2d 257 (7th Cir. 1990), the Court held that the cause of action for an allegedly illegal layoff was the day the plaintiffs received notice of the decision, not the day the school began classes without the plaintiff's employ. 894 F. 2d at 259 (citing

Ricks and Chardone).

Plaintiff will argue that the RIF was not the final decision because in past RIF's he had been able to find an alternative job before the RIF was slated to take effect. He will allege here that he applied for over 20 jobs during this time period. This argument ignores the plain language of Ricks, because it is the RIF, i.e., the elimination of his job, plaintiff is challenging, not the failure to hire him in any of the other positions. Defendant concedes that plaintiff could have challenged any of the decisions not to hire him in any of the other positions, but he did not. He filed no charge with the EEOC regarding any of these events. See Morgan, 172 F. Supp. 2d 98, supra. Moreover, well within the 180 day period Mr. Bansal decided he would not be offered another job at WMATA and accordingly retired. Indeed the charge Plaintiff filed specifically referenced only the RIF, not the failure to be hired in any of the subsequent applications:

> II. The reasons given to me for my job being abolished was business circumstances and organizational goals. I was the only Indian working in that department and mine was the only job to be abolished. No reasons has been given to me for the disparate treatment.

Exhibit 3, paragraph II. In Stepney v. Naperville Sch. Dist. 203, 392 F.3d 236, 240 (7th Cir. 2004), the court rejected as untimely claims by an employee who transferred from one union to another. It noted that "failure to remedy an unlawful employment action is not a discrete actionable violation. . . . Here, by contrast, the character of Stepney's transfer and loss of seniority was apparent immediately and is not alleged to have changed through duration or repetition." Mr. Bansal's claims are analogous. He tries to shoehorn WMATA 's alleged failure to corrected the allegedly discriminatory RIF into allegedly multiple failures to hire into other positions. He filed no such charge before the

EEOC, and Stepney illustrates that the failure to correct that allegedly unlawful RIF is not a discrete employment action.

Moreover, the plain language of the Ricks decision is fatal to this argument. In Ricks, the plaintiff had filed a grievance about the decision not to grant him tenure: "the EEOC notes that the June 26 letter explicitly held out to Ricks the possibility that he would receive tenure if the Board sustained his grievance. . .even if the Board's first decision expressed its official position, it could be argued that the pendency of the grievance should toll the running of the limitations periods." Ricks, 449 U.S. at 260-261. Nonetheless, the Court rejected this argument:

> But entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made.
>
> As to the latter argument, we have already held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods. (Citation). The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made.

Id (emphasis added).

In the case at hand, the decision on the RIF was made and was final on the date plaintiff received notice of it. Procedures for obtaining alternative employment are remedies for that decision, not a reconsideration of it. Accordingly, Ricks and Chardon compel a similar result here, plaintiff's arguments notwithstanding.

Thus, however harsh the rule may seem, it is clear from Ricks and Chardon, as well as the cases following them, especially in light of Justice Brennan's pointed dissent,

that plaintiff Bansal's action must be dismissed for failure to file with the EEOC within the 180 day statute of limitations.

## III. PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE

In the alternative, if the November 13 receipt of notice of the reduction in force is not the triggering event, Plaintiff's claims must fail for his failure to allege an adverse action. It is clear in this Circuit that this is an element of the *prima facie* case:

> In federal as in private employment cases, our decisions-with an exception to be mentioned in a moment-require plaintiffs to satisfy the first step of the McDonnell Douglas test by showing that they have been subjected to some sort of adverse personnel or employment action. Thus, to state a prima facie claim of disparate treatment discrimination, the plaintiff must establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. For retaliation claims, such as the one Brown alleges, the prima facie requirements are slightly different. The plaintiff must show "1) that she engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two." A common element required for discrimination and retaliation claims against federal employers, and private employers, is thus some form of legally cognizable adverse action by the employer.

Brown v. Brody, 199 F.3d 446, 452-453 (D.C. Cir.1999)(citations omitted). In the case at hand, plaintiff retired and was not ultimately subjected to the RIF by his own actions and suffered no adverse action. Therefore, he fails to state a *prima facie* case under Brown. See Smith v. District of Columbia, 271 F. Supp. 2d 165, 172 (D.D.C. 2003)(following Brown, finding no adverse action for retaliation: "Smith, however, was never terminated from her position . . . , she appears to have retired before the termination proceedings were complete"); reversed on other grounds, 430 F. 3d. 450 (D.C. Cir. 2005).

**IV. PLAINTIFF CANNOT ESTABLISH THAT HE WAS "A QUALIFIED INDIVIDUAL WITH A HANDICAP" WITHIN THE MEANING OF THE REHABILITATION ACT**

Plaintiff alleges in his Second Amended Complaint that he was required to have surgery in August of 2003 and was scheduled to be out on disability until December 1, 2003. He further alleges that On October 21, 2003 he requested permission to telecommute for a period of six months. See paragraphs 16 and 17 of Second Amended Complaint. Plaintiff's own admissions, therefore prove that plaintiff was not a "qualified individual with a disability" within the meaning of section 704 of the Rehabilitation Act.

First, and most importantly, these allegations demonstrate that plaintiff was suffering from a temporary condition, not a disability that would interfere with a major life activity. As Judge Pratt of this Court held in Paegle v. Department of the Interior, 813 F. Supp. 61 (D.D.C. 1993): "It is well established that the [Rehabilitation] Act was never intended to extend to persons suffering from temporary conditions or injuries. 'In general, a temporary condition is not considered a handicap under the Rehabilitation Act". Id. at 64-65 (citing Visarraga v. Garrett, No. C-88-2828, 1992 U.S.Dist. LEXIS 9164, at *13 (N.D.Cal. June 16, 1992) (holding that plaintiff's lower back strain-sprain was not a handicap under Rehabilitation Act). See also Evans v. Dallas, 861 F.2d 846, 852-53 (5th Cir.1988) (plaintiff's knee injury which required surgery but did not constitute "impairment of a continuing nature" was not a handicap); Grimard v. Carlston, 567 F.2d 1171, 1174 (1st Cir.1978) (fractured and dislocated ankle not a handicap); Saffer v. Town of Whitman, No. 85-4470, 1986 WL 14090, at *1 (D.Mass Dec. 2, 1986) (temporary condition such as pregnancy not a handicap).See also EEOC: Americans with

Disabilities Act Employment Regulations, 29 C.F.R.1630.2(j)("temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis and influenza.").

Second, because plaintiff pleads that he needed to telecommute for six months following October 21, 2003, he could not have been qualified for any of the 20 positions for which he applied in January of 2004, unless he proves he could have accomplished the duties of a particular position while telecommuting. Telecommunting is a privilege, not a right under the CBA. It is especially doubtful that telecommuting would be authorized during the first six months of an employee's assignment to a new job. See Davis v. Bowes, 1997 WL 655935, *16 (S.D.N.Y.,1997):

> An employee cannot be considered "otherwise qualified" when she is unable to report to work at the time required, because she is not able to perform one of the essential functions of her job. Guice-Mills v. Derwinski, 772 F.Supp. 188, 199 (S.D.N.Y.1991), aff'd, 967 F.2d 794 (2d Cir.1992) (finding that employee unable to report to work because of depression and effects of sedating medication was not "otherwise qualified" for position sought); accord Teahan v. Metro-North Commuter Railroad Co., 951 F.2d 511, 515 (2d Cir.1991), cert. denied, 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992); Francis v. Runyon, 928 F.Supp. 195, 205 (E.D.N.Y.1996); see also Gilbert v. Frank, 949 F.2d 637, 641 (2d Cir.1991) (explaining that "otherwise qualified" means that an employee can perform the essential functions of her job despite her disability). It is axiomatic that an employee who cannot show up for work cannot perform an "essential function" of her job. Jackson v. Veterans Administration, 22 F.3d 277, 279 (11th Cir.) (because employee was absent numerous times, employee "could not fulfill this essential function of his employment, that of being present on the job, and was not otherwise qualified") (citations omitted), cert. dismissed, 513 U.S. 1052, 115 S.Ct. 657, 130 L.Ed.2d 560

> (1944); Misek-Falkoff v. IBM Corp., 854 F.Supp. 215 (S.D.N.Y.1994) ("Some degree of regular predictable attendance is fundamental to most jobs"), aff'd, 60 F.3d 811 (2d Cir.), cert. denied, 517 U.S. 1111, 116 S.Ct. 1333, 134 L.Ed.2d 484 (1995). Consequently, an employer is not required to accommodate an employee's inability to show up for work. Fink v. N.Y.C. Dep't of Personnel, 53 F.3d 565, 567 (2d Cir.1995) (reasonable accommodation "does not require a lowering of standards ··· nor that the employer 'make fundamental or substantial modifications' in order to eliminate the disadvantages flowing from the disability") (quoting Alexander v. Choate, 469 U.S. 287, 300, 105 S.Ct. 712, 719-20, 83 L.Ed.2d 661 (1985)); Gilbert, 949 F.2d at 642 (reasonable accommodation does not mean elimination of any of a job's essential functions) (citations omitted); Kotlowski v. Eastman Kodak Co., 922 F.Supp. 790, 798 (W.D.N.Y.1996) ("The ADA does not require an employer to accommodate an employee who cannot get to work"). Furthermore, defendants were not obligated to maintain a vacancy on the Paragon Team for the duration of Davis' leave. See, e.g., Weiler v. Household Finance Corp., 101 F.3d 519, 525 (7th Cir.1996) ("an employer is not required to 'bump' other employees to create a vacancy so as to be able to reassign the disabled employee").

Id. at *16.

Because plaintiff does not plead, nor can he show, that any of the twenty jobs for which he applied could be accomplished while telecommunting for six months, his allegations under the Rehabilitation Act must fail.

Third, plaintiff has not alleged that there were jobs available in the local job market so as to demonstrate that his alleged disability substantially limited his ability to work. Accordingly, in such circumstance, the D.C. Circuit held in Duncan v. WMATA, 240 F. 3d 1110 (D.C. Cir. 2001)(en banc), that the plaintiff was not disabled under the Americans with Disabilities Act, which has the same standards as the Rehabilitation

Act:[3]

> In concluding that Duncan failed to meet his evidentiary burden, we hold that the ADA requires a plaintiff in Duncan's position to produce some evidence of the number and types of jobs in the local employment market in order to show he is disqualified from a substantial class or broad range of such jobs; that is, the total number of such jobs that remain available to the plaintiff in such a class or range in the relevant market must be sufficiently low that he is effectively precluded from working in the class or range. See Sutton, 527 U.S. at 491-92, 119 S.Ct. 2139. The approach we adopt is consistent with most other circuits'. See Santiago Clemente v. Executive Airlines, Inc., 213 F.3d 25, 32-33 (1st Cir.2000) (concluding former flight attendant failed to show temporary hearing loss was disability under ADA because she offered "no evidence of how many jobs call for this ability, or that she was precluded from any class of jobs"); Webb v. Clyde L. Choate Mental Health & Dev. Ctr., 230 F.3d 991, 997 (7th Cir. 2000) (upholding summary judgment against psychologist suffering from severe asthma, osteoporosis, and a weakened immune system because he "ha[d] not presented evidence that his condition prevents him from performing a class of jobs"); Taylor v. Nimock's Oil Co., 214 F.3d 957, 961 (8th Cir. 2000) (concluding former cashier with 40 hour week and 10 pound carry limit did not establish disability because she "presented no evidence to create a genuine issue of material fact about whether she could perform a class of jobs with her restrictions" disqualifies her from only the narrow range of assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds").

Id. at 1115-1116.

---

[3]See Lucenti v. Potter, 432 F. Supp. 2d 347, 365 n.3 (S.D.N.Y. 2006)("The definition of an 'individual with a disability ' in the ADA is virtually identical to the definition of 'individual with a handicap' under the Rehabilitation Act, 29 C.F.R, Pt. 1630, App., 56 Fed. Reg. 35726, 35740(July 26, 1991)(quoting Chandler v. City of Dallas, 2 F. 3d 1385, 1391 (5th Cir. 1993)("Congress intended that the relevant case law developed under the Rehabilitation Act should be generally applicable to the term 'disability' as used in the ADA.").

Plaintiff must come forward, on summary judgment, with some evidence to demonstrate that he was "substantially limited" in his ability to work.[4] He has not so pled it and WMATA contends, he cannot bring forth evidence to so demonstrate to satisfy his burden under Celotex[5] and Anderson.[6]

For all of these reasons, summary judgment must be granted on the Rehabilitation Act claim.

## V. WMATA IS IMMUNE FROM SUIT UNDER SECTION 1983

WMATA is an interstate compact agency and instrumentality of the three signatories to the Compact. See WMATA Compact, Section 4, published at D.C. Code

---

[4]Plaintiff bears the burden of proof in establishing that he is a person with a disasbility within the meaning of the Act or is regarded as such. Duncan v. WMATA, 240 F.3d 1110,1114 (D.C. Cir. 2001)(en banc). The Act's requirements "are interpreted strictly to create a demanding standard for qualifying as disabled." Brown v. Small, 2005 WL 736530, *2 (D.D.C. 2005)(quoting Toyota Motor Mfg. Kentucky, Inc. v Williams, 534 U.S. 184, 197(2002)).

[5]Once the moving party makes the initial showing that no issue exists as to any material fact, the burden shifts to the opposing party to demonstrate the existence of a material factual dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Plaintiff, as the non-moving party, is required to provide evidence that would permit a reasonable jury to find in his favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). In ruling upon a Summary Judgment motion, all reasonable inferences that may be drawn from the facts in the record must be drawn in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

[6]Plaintiff also claimed, in his Declaration in support of his Opposition to Defendant's original Motion for Summary Judgment that he had tuberculosis in January of 2004, the same time he asserts that he was qualified for the twenty other positions. Plaintiff needs to pick a story and stay with it. Tuberculosis is not a disability under the ADA or Rehabilitation Act. See Lester v. Trans World Airlines, Inc., 1997 WL 417814 (N.D. Ill. 1997)("Lester has presented no evidence that her tuberculosis is still active, that there is a high likelihood of it recurring in a substantially limiting form, or that a substantial limitation on her major life activities is required to prevent or lessen the severity of its recurrence."). Plaintiff Bansal is in exactly the same position as plaintiff in Lester; he has made none of these showings, either.

Ann. §9-1107.01 and Morris v. WMATA, 781 F.2d 218, 225 n.4, 227 (D.C. Cir. 1986). WMATA is an arm of the governments of the states of Maryland and Virginia and thus enjoys Eleventh Amendment immunity from suit. Morris, 781 F.2d at 225, 228 and Lucero Nelson v. WMATA, 1 F.Supp.2d 1, 7 (D.D.C. 1998). Several judges of the District Court for the District of Columbia have held that WMATA is not subject to suits under Section 1983.[7] Lucero-Nelson v. WMATA, 1 F. Supp. 2d 1, 7 (D.D.C., 1998); Atraqchi v. WMATA, No. 99-702 (D.D.C. July 3, 2000) (attachment 5); and Thompson v. WMATA, 99-2638 (D.D.C. 2000), slip op. at 6, aff'd 2001 WL 1154420 (D.C. Cir. 2001) (attachment 4). In Clarke v. WMATA, 654 F. Supp. 712 (D.D.C. 1985), aff'd, 808 F.2d 137 (D.C. Cir. 1987), the court dismissed claims based upon Sections 1981 and 1983 and upon a public policy concept against racial discrimination on the basis of WMATA's 11th Amendment immunity.

In Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Court held that states and arms of the state are not subject to suit arising under 42 U.S.C. §1983. The Court's determination was a matter of statutory construction - it held that states and arms of the state were not persons within the meaning of Section 1983. 491 U.S. at 64-66. The Court held that in passing Section 1983 Congress did not intend to disturb the

---

[7]The Civil Rights Act of 1871, 42 U.S.C. §1983, as amended, provides, that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

States' Eleventh Amendment immunity and that Congress did not intend to provide a federal forum for civil rights claims against states.

In Morris, the D.C. Circuit analyzed Supreme Court law regarding state entities are entitled to dismissal of a federal suit on the basis of Eleventh Amendment immunity. The court held that WMATA was an arm of the state, rather than a political subdivision, and therefore entitled to assert Eleventh Amendment immunity from suit. It held that the states of Maryland and Virginia clearly intended to confer their Eleventh Amendment immunities upon WMATA. 781 F.2d at 225. It noted that the practical result of a judgment against WMATA would be payment from the treasuries of Maryland and Virginia and also noted that WMATA has no authority to levy taxes. The holding of Morris, that WMATA is properly characterized as an arm of the states, was confirmed in Hess v. Port Authority, 513 U.S. 30, 43, 49-50 (1994), which held that the Port Authority of New York and New Jersey was not entitled to assert 11th Amendment immunity. In Hess, the Supreme Court explicitly confirmed that Morris was correctly decided and concluded that WMATA had been structured by the Compacting states to enjoy the special constitutional protections of the states. Therefore all claims against WMATA arising under Section 1983 must be dismissed See Jones v. WMATA, 205 F.3d 428, 432 (D.C. Cir. 2000).

**IV. CONCLUSION**

Plaintiff's Title VII claims are untimely because he failed to file with the EEOC within 180 days of notice of his reduction in force. Even if timely, he fails to show an adverse action because he voluntarily retired. The Rehabilitation Act claims must be

dismissed because Plaintiff cannot demonstrate that he is a "qualified individual with a disability" because (1)his disability was only temporary; (2) he cannot demonstrate that he was able to show up for work; and (3) he has not pled that his disability "substantially limited" his ability to work. Lastly, WMATA is immune from suit under Section 1983.

For these reasons, judgment should be entered in favor of Defendant and plaintiff's complaint dismissed with prejudice.

Respectfully submitted,

Carol B. O'Keeffe
General Counsel

Mark F. Sullivan #430876
Deputy General Counsel

Bruce P. Heppen #252171
Associate General Counsel

(202) 962-2569

/S/
David J. Shaffer #413484
Assistant General Counsel
(202) 962-2820

600 Fifth Street, N.W.
Washington, D.C. 20001
Attorneys for WMATA